U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

AUG 1 0 2007

ROBERT H. SHEMWELL, CLERK
BY _____
            DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

HERMAN COLLINS                           CIVIL ACTION NO: 06-1742

VERSUS                                   JUDGE DONALD E. WALTER

TOWN OF ZWOLLE, ET. AL.                  MAGISTRATE HORNSBY

---

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by the Defendants. See Record Doc. #16. Plaintiff opposes this motion. See Record Doc. #18. For the reasons set forth below, Defendants' Motion for Summary Judgment is hereby **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff, Herman Collins ("Collins"), filed this cause of action alleging that he was terminated from the Zwolle Police Department without a due process hearing and without legal cause in violation of 42 U.S.C. Section 1983 and the Louisiana Constitution Article I, Section 2. Defendants in this matter are as follows: Roger Lopez, individually and in his capacity as Mayor of the Town of Zwolle; Allen Rivers, individually and in his capacity as a Council Member of the Town of Zwolle; Ellzy Anderson, individually and in his capacity as a Council Member of the Town of Zwolle; Carolyn Cutright, individually and in her capacity as a Council Member of the Town of Zwolle; Martha Henderson, individually and in her capacity as a Council Member of the Town of Zwolle; and Nell Maxey, individually and in her capacity as a Council Member of the Town of Zwolle.

1

Collins was hired by the Board of Aldermen for the Town of Zwolle, Louisiana, on February 5, 2004. See Record Doc. # 16, Defendants' Statement of Uncontested Facts at ¶ 8.

Several months after Collins joined the police force, the town aldermen received complaints regarding a romantic relationship between Collins and another police department employee, Tonya Sepulvado ("Sepulvado"). See Record Doc. #16, Affidavit of Martha Henderson at ¶ 6, Affidavit of Carolyn Cutright at ¶ 6, Affidavit of Roger Allen Rivers at ¶ 6, Affidavit of Nell Maxey at ¶ 6, Affidavit of Ellzy Anderson at ¶ 6.  In an effort to address the complaints, the aldermen called a special meeting on June 9, 2005, and requested that Collins and Sepulvado appear to discuss the complaints. See Record Doc. #16, Minutes (6/9/05) at ¶ 2. The meeting was open to the public at the request of Collins and Sepulvado. See id.

The aldermen questioned Collins and Sepulvado about their alleged relationship. Councilwoman Henderson began the discussion by stating that the relationship was causing a disruption at the police department and that the Council needed assurances from Collins and Sepulvado that any relationship between the two was over. See id.  In response, Collins stated that he was not having a relationship with Sepulvado.[1] See id.  The town attorney, Mrs. Anne Garcie, advised both Collins and Sepulvado that if a relationship developed between the two of them, one or both of them would be terminated from their employment. See id. No disciplinary action was taken against the Plaintiff at this meeting other than the warning by Mrs. Garcie.

At the time that the June 9, 2005 meeting was held, Collins acknowledges that Sepulvado

---

[1] The Court notes that when Collins was later questioned in his deposition about whether he was having a relationship with Sepulvado at the time of the June 9, 2005 meeting, he replied that the two were not having a romantic relationship, they were just having sex. See Record Doc. #18, Collins Deposition at 30-31.

was pregnant with his child. See Record Doc. #18, Collins Deposition at 37. Collins also admits

that he is the father of Kadyn Myles Collins, born to Sepulvado on February 23, 2006, and that

his name appears as the father of this child. See Record Doc. #18, Collins Deposition at 20;

Record Doc. #16, Birth Certificate of Kadyn Myles Collins. Collins asserts that he and

Sepulvado did not have a sexual relationship after the June 9, 2005 meeting. See Record Doc.

#18, Collins Deposition at 37.

After the June 9, 2005 meeting, the aldermen received subsequent complaints regarding

Collins and Sepulvado having a romantic relationship. See Record Doc. #16, Affidavit of

Martha Henderson at ¶ 10, Affidavit of Carolyn Cutright at ¶ 10, Affidavit of Roger Allen Rivers

at ¶ 10, Affidavit of Nell Maxey at ¶ 10, Affidavit of Ellzy Anderson at ¶ 10.   Additionally, the

aldermen also received complaints from the Plaintiff's wife, Mirian Collins, stating that

Sepulvado had harassed her on several occasions. See Record Doc. #16, Affidavit of Martha

Henderson at ¶ 11, Affidavit of Carolyn Cutright at ¶ 12, Affidavit of Roger Allen Rivers at ¶ 11,

Affidavit of Nell Maxey at ¶ 11, Affidavit of Ellzy Anderson at ¶ 11.   Alderman Carolyn

Cutright received information in December 2005 that a verbal altercation occurred at the Zwolle

Police Department between the Plaintiff, his wife, and Sepulvado. See Record Doc. #16,

Affidavit of Carolyn Cutright at ¶ 11.

It is the position of the aldermen that the complaints prompted the Board to become

concerned about the morale of the police department and the citizens of the town of Zwolle. See

Record Doc. #16, Affidavit of Martha Henderson at ¶ 14, Affidavit of Carolyn Cutright at ¶ 15,

Affidavit of Roger Allen Rivers at ¶ 13, Affidavit of Nell Maxey at ¶ 13, Affidavit of Ellzy

Anderson at ¶ 13.   Collins and Sepulvado were asked to appear for the regular Council Meeting

on May 11, 2006. See Record Doc. #16, Affidavit of Carolyn Cutright at ¶ 15. Collins and

Sepulvado were questioned about the existence of a romantic relationship following the June 9,

2005 meeting, which Sepulvado denied. See Record Doc. #16, Minutes (5/11/06) at ¶ 12.

Collins and Sepulvado were also questioned about the alleged harassment of Mrs. Mirian

Collins, which both denied. See id.

A motion was made by Councilwoman Henderson and seconded by Councilwoman

Cutright to terminate the employment of Collins and Sepulvado immediately. See id. The

motion was carried by a vote of 5-0. See id.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56 (c), summary judgment "shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome

of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a

reasonable jury could return a verdict for either party. Id. The court must "review the facts

drawing all references most favorable to the party opposing the motion." Reid v. State Farm

Mutual Auto Insurance Co., 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its

motion, and identifying those parts of the record that it believes demonstrate the absence of a

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th

4

Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. Celotex Corp., 477 U.S. at 325; Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1355-56 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

Plaintiff asserts that Defendants denied him of his due process rights afforded him under the United States Constitution in violation of 42 U.S.C. section 1983, as well as the Louisiana Constitution Article I, Section 2. Plaintiff alleges that Defendants failed to provide him with a

5

due process hearing prior to terminating his employment on May 11, 2006.

## I.   Due Process

Collins argues that as a public employee he is entitled to a pre-termination hearing, or due process, as established by the United States Supreme Court in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 104 S.Ct. 1487 (1985).   Whether a plaintiff has a constitutional claim for a violation of due process is dependent upon whether the plaintiff has a property right in continued employment.  See id.

Property interests are not created by the Constitution, but rather are created and defined by existing rules that stem from an independent source, such as state law.  Id.   Thus, this Court must turn to Louisiana law to determine whether Collins had a protected property interest in his continued employment with the town.

Collins would have a property right in continued employment if, as a police officer, he was covered by a state or city civil service system, or he was hired to work for the town subject to an employment agreement.  See Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699 (1972).

The city civil service system is codified by the Louisiana Constitution, and is applicable to all cities in Louisiana having a population more than 400,000 citizens.  The relevant provision reads as follows: "The city civil service is established and includes all persons holding offices and positions of trust or employment in the employ of each city having over four hundred thousand population and in every instrumentality thereof."  Louisiana Constitution, Article X, Part I, § 1(B).

Further, the Louisiana Constitution establishes a system of classified fire and police civil

service applicable to municipalities with a population exceeding 13,000 citizens.  The relevant

provision reads as follows:

> A system of classified fire and police civil service is created and established. It
> shall apply to all municipalities having a population exceeding thirteen thousand
> and operating a regularly paid fire and municipal police department and to all
> parishes and fire protection districts operating a regularly paid fire department.

Louisiana Constitution, Article X, Part II, § 16.

Additionally, policemen are provided mandatory civil service designation in

municipalities with a population between 7,000 and 13,000 citizens according to the last

preceding decennial U.S. census. See La. Rev. Stat. Ann. § 33:2531 (2007).

The town of Zwolle has a population of 1,783 according to the United States Census for

2000.  U.S. Census Bureau, http://www.census.gov/main/www/cen2000.html (last visited July

27, 2007).  The Defendants argue that, because Zwolle has a population far below the required

minimum for mandatory civil service designation, police officers for the town of Zwolle are not

civil servants.  The Defendants cite to two published Louisiana Attorney General opinions,

which this Court finds to be instructive.  Louisiana Attorney General William J. Guste, Jr.

opined that the town of Abita Springs, Louisiana, with a population of less than 7000 citizens, is

not subject to the mandatory system of classified fire and police civil service as required by

section 33:2531. 86 Op. La. Att'y Gen. 589 (1986).   Similarly, Louisiana Attorney General

Richard P. Ieyoub opined that fireman and police officers of Cottonport, Louisiana, were not

covered by the fire and police civil service procedures of section 33:2531 because the town had a

population of less than 7000 citizens. 93 Op. La. Att'y Gen. 323 (1993).

This Court finds that the town of Zwolle, with a population of 1,783 citizens, is not

7

subject to the mandatory system of classified fire and police civil service as required by section 33:2531. Further, the Mayor of Zwolle confirmed in his affidavit that the town does not have a classified civil service system for its policeman, and no municipal ordinance sets forth terms and conditions for terminating town employees. See Record Doc. #16, Affidavit of Roger Lopez at ¶ 4-5. Therefore, Collins does not have a protected property interest created by state law which would require the town of Zwolle to provide him with a pre-termination hearing.

Citing to Cleveland Board of Education v. Loudermill, 470 U.S. 532, 104 S.Ct. 1487 (1985), Plaintiff argues that he was entitled to a pre-termination hearing prior to his termination. See Record Doc. #18, Plaintiff's Opposition at 1.  Plaintiff reasons that, once the Zwolle Board of Aldermen convened a meeting for the purpose of receiving evidence regarding his fitness to continue his employment as a police officer, notice of the hearing should have met the due process requirements of a pre-termination hearing. See id.

However, this Court reads Loudermill as providing that the Plaintiff must first establish that the due process clause applies via an independent source, such as a state law, which creates a protected property interest. Loudermill, 470 U.S. at 541.  Only after the Plaintiff establishes his protected property interest may the Court proceed in determining whether the process provided was in fact sufficient.  See id.  Without a protected property interest, due process does not attach. As discussed supra, this Court finds that Plaintiff was not subject to a civil service system, and therefore does not have a protected property interest.  As such, the Zwolle Board of Aldermen was under no obligation to provide Collins with a pre-termination hearing based on his status as a public employee.

Plaintiff also cites to Wilhelm v. Vermilion Parish School Board, 598 So.2d 699 (La.

App. 3d Cir. 1992), for the proposition that a plaintiff without a protected property interest is still entitled to a full measure of due process once officials decide to provide a hearing. See Record Doc. #18, Plaintiff's Opposition at 3. The Court disagrees with this interpretation of Wilhelm. In Wilhelm, a non-tenured teacher was found not to have a protected property interest. Wilhelm, 598 So.2d at 701. The Appellate Court, out of an abundance of caution, examined whether Wilhelm was afforded due process prior to her termination. Id. at 701-702. The Court clearly examined the issue only to emphasize that, even if Plaintiff was entitled to due process protection, which she was not, it was provided in that instance. In fact, Wilhelm states "assuming *arguendo*, La.R.S. 17:81.5 creates a protected property right in the employment of non-tenured employees, due process was afforded plaintiff in accordance with the policies and procedure in affect at the time of her termination." Id. at 701.

This Court finds that Collins' employment was not subject to civil service designation. Further, this Court finds that the requirement of due process attaches only if Collins had a protected property interest in his continued employment. Therefore, the town was not required to provide Collins with a pre-termination hearing in spite of his being a public police officer because he was not classified as a civil servant.

**II.     Whether Collins' Employment was subject to an Employment Contract**

The Court now turns to the issue of whether Collins' employment was subject to an employment contract, written or implied. As stated supra, Collins would have a protected property interest in continued employment if his employment was subject to a written or implied employment contract. See White v. Mississippi State Oil and Gas Board, 650 F.2d 540, 541 (5th Cir. 1981).

9

The Court begins its analysis by noting that employment in Louisiana is presumed to be "at-will" absent a written employment contract. See Louisiana Civil Code Article 2747; see also Williams v. Delta Haven Inc., 416 So.2d 637 (La. App. 2 Cir. 1982).

The Court notes that Plaintiff's employment with the town was not subject to a traditional written employment contract.   Plaintiff was hired by a vote of the town aldermen for an indefinite period of time, without a written contract, and Plaintiff was free to resign at any time. See Record Doc. #16, Affidavit of Martha Henderson at ¶ 4, Affidavit of Carolyn Cutright at ¶ 4, Affidavit of Roger Allen Rivers at ¶ 4, Affidavit of Nell Maxey at ¶ 4, Affidavit of Ellzy Anderson at ¶ 4, Affidavit of Roger Lopez at ¶ 6-7.  Plaintiff also acknowledged in his deposition that his employment with the town was not subject to a written employment contract and that he was free to resign at any time.  See Record Doc. #18, Collins Deposition at 12-13.

Plaintiff argues that his employment with the town was subject to either an express or implied employment agreement due to the distribution of an employee policy that, according to Plaintiff, stated he could not be discharged for just cause without notice. See Record Doc. #18, Plaintiff's Opposition at 2-3.  In particular, Plaintiff argues that he was provided a set of rules or guidelines indicating how he would be disciplined or terminated, and that these rules contemplate a due process hearing. See Record Doc. #18, Plaintiff's Opposition at 3-4.

Plaintiff cites to Tolliver v. Concordia Water Works District No. 1, 735 So.2d 680 (La. App. 3d Cir. 1999), as support for his position that he had an expressed or implied right to continue his employment unless he violated his employer's rules and regulations. See Record Doc. #18, Plaintiff's Opposition at 3-4.  The Plaintiff in Tolliver argued that he had a property interest arising out of rules or mutually explicit understandings of regulations, policies, and

procedures of his employer. <u>Tolliver</u>, 735 So.2d at 683. The Court in <u>Tolliver</u> examined the implication of Louisiana's presumption of "at-will" employment against the United States Supreme Court decision in <u>Board of Regents v. Roth</u>, 408 U.S. 564, 92 S.Ct. 2701 (1972), which provides that due process protection of property interests may be created by an independent source, such as state laws, or by understandings that secure certain benefits and that support a claim of entitlement to those benefits. <u>See Roth</u>, 408 U.S. at 577.

Louisiana defines "at-will" employment as that which is terminable at the will of either the employer or the employee. <u>Tolliver</u>, 735 So.2d at 682; citing to <u>Williams</u>, 416 So.2d at 638. "Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge." <u>Id.</u>

The Court in <u>Tolliver</u> recognized that in some instances the facts will demonstrate that a particular employer adopted rules and regulations that caused its employees to expect continued employment absent certain transgressions. <u>See Tolliver</u>, 735 So.2d at 684. However, the <u>Tolliver</u> Court noted that this expectation must be more than unilateral; it must be mutual between the employee and the employer to create a protected property interest. <u>See id.</u>

> An employee's abstract concern or desire to be treated "fairly" and "reasonably" in being terminated will not defeat summary dismissal of his complaint. Instead, he must present some evidence to overcome the "at will" presumption, i.e., evidence tending to show the employer intended, expressly or impliedly, by adoption of certain rules, regulations, or policies to grant him the right to continued employment subject to certain conditions or certain specific understandings exist[ing] between he and the employer sufficient to cause him to reasonably expect such employment.

<u>Id.</u>

11

Plaintiff argues that the language found in a document entitled "Employment Policies" provided to Plaintiff by the town is sufficient to overcome the presumption of employment at will, and thus entitled him to a due process hearing. The paragraph in question reads as follows:

Dismissal - Termination

A.   An employee may be released from his job without notice within the 90 day probationary period, if the employee is not suited for the position and replacement and training periods.

B.   Notice of dismissal may be reduced or eliminated. Cause of violation of rules, misconduct, or "just" cause for dismissal would include, but is not limited to:

1.   excessive absenteeism
2.   abuse of sick leave privileges
3.   chronic tardiness
4.   dishonesty
5.   theft of property
6.   discourtesy to the general public
7.   inability to get along with other employees
8.   willful inefficiency
9.   falsification on employment records
10.  excessive delays on relief breaks or lunch periods
11.  reading of personnel records, except in the line of assigned duties
12.  use of unnecessary force.

See Record Doc. #18, Collins Deposition, Exhibit 3 at 5.

The Court reads this paragraph as merely informing employees that they are subject to termination with limited notice or without notice for violating certain rules. However, the paragraph indicates that the list is not exhaustive. The Court does not infer from the inclusion of this paragraph that the employer intended to provide Plaintiff with continued employment subject to a set of conditions. The employment policy provided to the Plaintiff does not indicate that employment will continue until or unless the Plaintiff committed one of the twelve listed

12

violations.  The Court also notes that the following phrase is contained in the same document: "the council may terminate the employment of an employee for any reason."  See Record Doc. #18, Collins Deposition, Exhibit 3 at 8.  Therefore, the Court finds that Collins was not employed by the town pursuant to a written or implied contract.

Because this Court finds that Collins was not hired pursuant to a state or city civil service system, nor pursuant to a written or implied employment agreement, Collins did not have a property interest in his continued employment with town of Zwolle.  The town was not required to provide Collins with a due process hearing.  The Court finds that Defendants did not violate Plaintiff's due process rights in violation of the United States Constitution or the Louisiana Constitution.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**.  All claims by Plaintiff are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED**, at Shreveport, Louisiana, this __10th__ day of August, 2007.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

13